IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEFFREY McCONNELL, individually
and as natural parent and next
friend of BRADY McCONNELL
a juvenile,

    Plaintiffs,

v.                                    Civil Action No. 5:08CV113
                                            (STAMP)

JEFFREY GRIFFITH, individually
and in his capacity as agent and
employee of City of Wheeling,
WILL WARD, individually and in
his capacity as agent and
employee of City of Wheeling and
CITY OF WHEELING, a West Virginia
municipal corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER**[1]
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

Jeffrey McConnell brought this action on his own behalf and in his capacity as natural parent and next friend of Brady McConnell ("Brady"), a juvenile at the time of the incident. The plaintiffs allege that the City of Wheeling and the law enforcement officers who attempted to apprehend Brady violated Brady's constitutional rights by using excessive force to apprehend Brady, in violation of 42 U.S.C. § 1983. The plaintiffs, in their complaint, also allege

---

[1]This memorandum opinion and order confirms the ruling pronounced by this Court at a pretrial conference on December 2, 2009.

state law claims for tort of outrage and intentional infliction of emotional distress, battery, defamation, and negligent retention and hiring.

The defendants filed a motion for summary judgment, in which they assert that the plaintiffs have failed to make the requisite showing of unlawful arrest and excessive force for their § 1983 claims; and that the police officer defendants are entitled to qualified immunity. In addition, the defendants contend that the there are no genuine issues of material fact regarding the plaintiff's battery claim and that summary judgment should issue in their favor. The plaintiffs filed a response, to which the defendants have replied. This motion has been fully briefed and is now ripe for disposition. For the reasons set forth below, this Court finds that the defendants' motion for summary judgment must be granted in part and denied in part because the plaintiff Brady McConnell has failed to demonstrate a genuine issue of material fact with regard to the unlawful arrest, but has demonstrated a genuine issue of material fact that defendant Griffith used excessive force. Therefore, this Court need not address Griffith's qualified immunity defense with regard to the unlawful arrest claim. This Court does, however, find that defendant Griffith is not eligible for qualified immunity at this time with regard to the excessive force claim when viewing the facts in the light most favorable to the plaintiffs. Further, this Court finds that

plaintiff Brady McConnell has demonstrated a genuine issue of material fact regarding his state law battery claim against defendant Griffith. Finally, this Court finds that defendant Griffith is not eligible for statutory immunity at this time with regard to the state law battery claim.

## II. Facts

On December 23, 2006, Brady and a friend, P.E.,[2] who was staying with the McConnell family, consumed a few glasses of wine and possibly some vodka. Early in the morning on December 24, 2006, at around 2:30 a.m., P.E. woke Brady and asked him to go outside for a walk. P.E. opened the door to a van parked on a street, causing the van's alarm to sound. Brady and P.E. sprinted away from the van.

At around 4:00 a.m. on December 24, 2006, Wheeling police officers Jeffrey Griffith ("Griffith") and Will Ward ("Ward") received a call about two individuals entering vehicles in the Warwood area of Wheeling. The officers drove to the area in Warwood where the incident had been reported. They turned down an alley and turned off the police car's headlights.

P.E. wanted to break into "one more car." Before P.E. opened the door, Brady saw the police car in which Griffith and Ward were seated and told P.E., "somebody's watching us, let's go." Brady

---

[2]The full name of this person who was a minor at the time of the incident is not used, but the initials are used, instead.

and P.E. split up and ran. The officers also separated. Ward spotted Brady and P.E. together and shouted, "Stop. Police. Stop. Police." Brady and P.E. again separated. Ward found Brady hidden and called for Griffith to come assist in apprehending Brady. Once Griffith arrived, Ward called out again, "Stop. Police." Brady once again took off running, but hit a privacy fence. He bounced off the fence, climbed it, and landed on a lawn chair on the other side. Brady continued to run. Griffith then shouted, "Stop or I'll shoot, motherfucker." On hearing that, Brady hesitated. Griffith, within five to eight feet of Brady, tackled him.

At this point, Griffith's and Brady's versions diverge. According to Griffith, while on top of Brady, Griffith yelled for Brady to put his arms behind his back. Even though face down, Brady still struggled and attempted to throw Griffith off of his back. Brady now was on his side and had flipped Griffith off of him. At that moment, Griffith believed he had lost control of him. Griffith then punched Brady twice in the head. Griffith testified that Brady "was squirming" and he thought Brady was getting back on his feet.

According to Brady, after Griffith tackled him, Griffith asked if Brady was going to keep making him run and Griffith then started punching him while Brady stated "No, I'm down, I'm done, I'm done, I'm down." Brady stated in his deposition that as he said this, Griffith continued to shake him. Brady stated that his

4

hands were spread out on the ground. Brady cannot recall how many times Griffith punched him in the face, but stated that the entire time he was saying "I'm done" and "I'm down."

Ward then arrived and they put Brady's hands behind his back and handcuffed him. The officers first took Brady to his home and then to Wheeling Hospital to treat a broken jaw.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

5

The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990).

On a motion for summary judgment, a court reviewing the supported underlying facts must view all inferences in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Further, when evaluating an assertion of qualified immunity under

summary judgment, a court must take all facts "'in the light most favorable to the party asserting the injury.'"  Clem v. Corbeau, 284 F.3d 543, 550-51 (4th Cir. 2002)(quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "The burden of proof and persuasion with respect to a claim of qualified immunity is on the defendant official."  Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003) (citing Gomez v. Toledo, 446 U.S. 635, 640-41 (1980)).

## IV.  Discussion

The plaintiffs, in their response to the defendants' motion for summary judgment, abandon all claims against defendants Ward and the City of Wheeling after discovery failed to yield facts or evidence necessary to sustain such claims.  The plaintiffs abandon their claims for negligent retention and hiring, tort of outrage and intentional infliction of emotional distress, and defamation against all defendants.  At a pretrial conference held on December 2, 2009, plaintiffs' attorney stated that plaintiff Jeffrey McConnell was not suing individually, but instead, only as the natural parent and next friend of plaintiff Brady McConnell. Further, Brady is no longer a minor, so there is no need for his father, Jeffrey McConnell, to be joined as a plaintiff as to his claims in this action.[3]  Thus, the only claims remaining by plaintiffs are claims by plaintiff Brady McConnell against

---

[3] At the time that this Court pronounced its rulings, there was still pending a counter-claim by the defendants against Jeffrey McConnell.

7

defendant Griffith, including a claim for battery, a state law claim, and a claim for excessive force and a claim for arrest without probable cause under 42 U.S.C. § 1983.

In their motion for summary judgment, the defendants first assert that the force the defendant officers used in their efforts to arrest Brady was reasonable and that the plaintiffs cannot show excessive force. The defendants then argue that if this Court finds excessive force, the defendants would still be entitled to summary judgment because of qualified immunity. Next, the defendants argue that the defendant officers were acting within the scope of their employment at the time of the incident and that there is no evidence that the defendant officers' conduct was malicious, in bad faith, wanton, or reckless. Therefore, the defendants argue that on the basis of statutory tort immunity, the defendants are entitled to summary judgment on the plaintiffs' state law battery claim. In the reply memorandum in support of their motion to dismiss, the defendants contend that plaintiff Brady McConnell's admission to the offense of fleeing from an officer is conclusive as to the existence of probable cause for his arrest.

A. <u>Section 1983 Claims</u>

Prior to the United States Supreme Court's decision in <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009), lower federal courts were required to follow a rigid two prong test for determining the

existence of qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Under that test, a court first looks to whether the officer's conduct violated a constitutional right, followed by an analysis of whether the constitutional right was clearly established at the time of the violation. <u>Id.</u> The <u>Pearson</u> court found shortcomings in the <u>Saucier</u> analysis. <u>Pearson</u>, 129 S. Ct. at 818-21. "Adherence to <u>Saucier's</u> two step protocol departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." <u>Id.</u> at 821 (internal quotations omitted). The Supreme Court, though, found that the <u>Saucier</u> procedure was often advantageous, and left open to district courts the "order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."

In this case, this Court determines that the traditional <u>Saucier</u> analysis will best facilitate the fair and efficient disposition of this case. Therefore, before this Court addresses the defense of qualified immunity, it will first determine whether the plaintiffs' claim is sufficient to put Officer Griffith to the task of defending the action.

1. <u>Unlawful Arrest</u>

Title 42, United States Code, Section 1983 provides redress for state action which deprives a citizen of a right, privilege or immunity ensured by the Constitution or law of the United States.

9

See 42 U.S.C. § 1983. When a court reviews a claim of false arrest to determine whether a constitutional violation occurred, its determination turns on whether the arrest or detention was supported by probable cause. Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991)("An arrest based on probable cause does not violate the Fourth Amendment, even if the wrong person is arrested."); Brooks v. Winston-Salem, 85 F.3d 178, 184 (4th Cir. 1996)(where initial arrest based on probable cause, continuing detention reasonable seizure under Fourth Amendment).

Here, Brady entered an admission in juvenile state court to the offense of fleeing from an officer, which, as part of the crime, lists that a law enforcement officer is attempting to make a lawful arrest of the person. W. Va. Code § 61-5-17(d). Pursuant to his admission, the state court adjudicated Brady a juvenile delinquent and sentenced him to one year of probation. Under West Virginia state law, "a conviction . . . and the accused discharged from further prosecution . . . is conclusive evidence of probable cause for believing the accused guilty of the offense charged to him, unless the conviction was procured by fraud." Haddad v. Chesapeake & Ohio Ry. Co., Syl. 88 S.E. 1038 (1916). Because Brady entered into an admission, thereby essentially establishing that the arrest was lawful, this Court cannot now say that there was no probable cause for the arrest. Accordingly, there was no constitutional violation of unlawful arrest or seizure. Therefore,

Griffith does not need to defend the action and this Court grants Griffith's summary judgment motion as to the § 1983 claim for unlawful arrest.

  2.  Excessive Force

A claim of excessive force by a law enforcement officer implicates the constitutional rights of an individual to be free from unreasonable search and seizure under the Fourth Amendment.[4] Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996). To determine whether the alleged conduct constitutes excessive force in violation of the Fourth Amendment, a court must apply a standard of objective reasonableness. Graham v. Connor, 490 U.S. 386, 395 (1989). Specifically, a court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001)(citing Graham, 490 U.S. at 395). A reviewing court is not to weigh an officer's conduct through the lens of "20/20 hindsight" when evaluating reasonableness. Graham, 490 U.S. at 396. Rather, "a particular use of force must be judged from the perspective of a reasonable officer on the scene." Id.

---

[4]The Fourth Amendment guarantees "that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV.

11

The reasonableness inquiry requires a court to examine all of the surrounding facts and circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Also relevant to the analysis is the extent of the plaintiff's injury. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). In undertaking this analysis, a court must remain cognizant that law enforcement officers "are forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97.

Here, this Court must examine the circumstances and the information known to Griffith immediately before he punched Brady in the face. According to Brady's deposition, Griffith yelled to stop or he would shoot, Brady then hesitated, was tackled, and was saying "I'm down" and "I'm done" as Griffith punched him.

A genuine issue of material of fact exists as to whether Brady was seized and under Griffith's control when Griffith punched Brady. Brady argues that in contrast to the officers' deposition testimony, he had submitted to the officers' authority and, therefore, had ceased to pose a threat to the officers.

This Court analyzes the Graham factors viewing the facts in the light most favorable to plaintiff Brady McConnell. The first

factor, the severity of the underlying offense, weighs against Brady. In accessing the severity of the underlying offence, "Fourth Circuit precedent focuses on the existence of criminal activity rather than the extent of harm caused by that activity." Valladares v. Cordero, No. 1:06cv1378, 2007 WL 2471067, at *3 (E.D. Va. Aug. 27, 2007), aff'd, 552 F.3d 384 (4th Cir. 2009). While Brady did not cause physical harm to the officers, Brady did flee from two officers while Griffith and Ward repeatedly yelled, "Stop. Police." Fleeing from an officer is a crime in West Virginia. W. Va. Code § 61-5-17(d). Given that Brady concededly fled from police officers, thereby engaging in criminal activity, this Court "cannot find the first factor weighs in his favor." Id.

The second Graham factor, however, whether the suspect poses an immediate threat to the safety of the officer or others, does weigh in Brady's favor. Brady states in his deposition that when Griffith shouted for him to stop or he would shoot, he did hesitate, was then tackled and was punched as he said he was "down" and "done." This factor weighs against Griffith because, taking Brady's facts as true, Griffith was able to control Brady before he punched him. Valladares, 552 F.3d at 390. There was no reasonable threat to Griffith once the fifteen-year-old plaintiff[5] hesitated, was tackled, and yelled that he was "down" and "done." Thus, this second factor weighs in the plaintiffs' favor.

---

[5] Brady McConnell has now reached the age of eighteen.

Even though Brady fled from Griffith, the third <u>Graham</u> factor weighs in Brady's favor.  Despite the initial flight from the officers, Brady claims that he stopped resisting the arrest prior to the occurrence of the alleged excessive force.  <u>See</u> <u>Valladares</u>, 2007 WL 2471067 at *4 (finding the third prong weighed in favor of a fifteen-year-old plaintiff who initially resisted arrest, but submitted to the officer's authority prior to the use of excessive force).  Brady's testimony indicates that when Griffith had him on the ground, he had stopped resisting.  When viewed in the light most favorable to Brady, as the injured party, the facts indicate that Griffith used excessive force after apprehending Brady.  Accordingly, this third factor weighs in Brady's favor.

Finally, this Court must consider the extent of the plaintiff's injury.  <u>James</u>, 326 F.3d at 527.  Brady suffered a broken jaw.  This is a serious injury, particularly in light of Brady's conduct.  Someone who is down on the ground yelling that he is "done" and "down" would normally not be punched in the face.

Under these circumstances, this Court finds that a reasonable officer would have believed that Brady posed no threat of serious physical harm to him after he had submitted to authority and said "I'm done" and "I'm down" while spreading his arms on the ground.  Accordingly, this Court finds that the plaintiff Brady McConnell has, at this stage in the case, demonstrated a genuine issue of material fact that defendant Griffith acted with excessive force

and, therefore, the defendants motion for summary judgment on the plaintiff's § 1983 claim for excessive force is denied.

B.  <u>Qualified Immunity Affirmative Defense</u>

Griffith claims that his motion for summary judgment should nonetheless be granted because he is entitled to qualified immunity.  Under <u>Saucier</u>, analysis of a qualified immunity defense requires a two-part inquiry.  <u>Saucier</u>, 533 U.S. at 201.  The first question is whether the facts alleged, when viewed in the light most favorable to the injured party, "show the officer's conduct violated a constitutional right."  <u>Id.</u>  If the facts alleged fail to make this showing, the inquiry is at an end, and the official is entitled to summary judgment.  <u>Id.</u>  If, however, the facts alleged do show a constitutional injury, the second question is whether the constitutional right was clearly established at the time of the violation.  <u>Id.</u>  Qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred.  <u>Id.</u>

The question is not whether the Fourth Amendment prohibition against the use of excessive force was clearly established at the time.  Rather, it is a more specific inquiry into whether a clearly established prohibition existed against the application of the particular force used under the particular circumstances in which it was used.  <u>Id.</u>  However, that a defendant's conduct constitutes

15

a constitutional violation under clearly established law "does not require that the 'very action in question has been previously held unlawful[.]'" Robles v. Prince George's County, 302 F.3d 262, 270 (4th Cir. 2002)(quoting Wilson v. Layne, 526 U.S. 603, 615 (1999) (internal citations and quotation marks omitted)). Rather, the proper inquiry is whether the unlawfulness of the conduct would have been apparent to a reasonable officer under the circumstances in light of pre-existing law. Saucier, 533 U.S. at 201-02; Wilson, 526 U.S. at 609.

In this action, the question is (1) whether the force used by Griffith was excessive, thereby constituting a constitutional injury, where such force was used, according to the facts viewed in the light most favorable to Brady, after Brady submitted to Griffith's authority; and, (2) if the force was excessive, whether a reasonable official under the circumstances would have known that such force was unlawful.

Once a defendant properly asserts the defense of qualified immunity, the plaintiff bears the burden of proof on the first question, here, whether the force used by Griffith was excessive and thereby constituted a constitutional violation. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007). See also Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993)("Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the

16

law."). As discussed above, this Court has found that a genuine issue of material fact exists as to whether the plaintiff has suffered a constitutional injury. This fact alone defeats Griffith's summary judgment motion. This Court cannot say as a matter of law that the plaintiff did not suffer a constitutional injury therefore ending the analysis and entitling Griffith to qualified immunity. Likewise, this Court also cannot find as a matter of law that a constitutional injury did occur, sufficiently moving this Court forward to the second inquiry under Saucier, whether that constitutional right was clearly established. See Smith, 597 F.2d at 414. Because summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law," summary judgment is not appropriate in this case, and the defendant's motion is denied. Id.

If the force was excessive, Griffith would still be entitled to qualified immunity if a reasonable officer under the circumstances would not have known that such force was unlawful. "The defendant bears the burden of proof on [this] second question[.]" Henry, 501 F.3d at 378. Griffith has not met this burden. Griffith argues that he had lost control of Brady and that the force was necessary to keep Brady from fleeing, for officer

safety, and for safety of nearby residents. He has not explained his conduct in Brady's factual scenario.

Indeed, Griffith does state in his motion for summary judgment that he is entitled to qualified immunity under the particular circumstances of this case. Griffith believes that a reasonable officer would use the particular force he used in that particular circumstance. Because Griffith uses a different set of facts than Brady, he presents no defense to why he continued to hit Brady after Brady stated he was "down" and "done." Griffith has not met his burden. Accordingly, this Court would deny qualified immunity under this prong of the Saucier analysis, as well.

C. State Law Battery Claim

In West Virginia, the tort of battery consists of (a) an action "intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004)(quoting Restatement (Second) of Torts, § 13 (1965)). Here, taking Brady's version of the facts as true, because Griffith's contact with Brady was intentional and harmful contact did occur, Brady has satisfied the elements of battery.

Griffith contends, however, that he is immune from the state law battery claim because of the West Virginia Governmental Tort

18

Claims and Insurance Reform Act. The West Virginia Code provides that an employee of a political subdivision is immune from liability unless one of three situations applies: "(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) Liability is expressly imposed upon the employee by a provision of this code." W. Va. Code § 29-12A-5(b). In this case, there are genuine issues of material facts as to whether Griffith acts were with malicious purpose, in bad faith, or in a wanton or reckless manner, and summary judgment therefore is not appropriate on the issue of Griffith's liability. Kelley v. City of Williamson, W. Va., 655 S.E.2d 528, 535 (W. Va. 2007). A jury must determine whether Griffith's acts were in bad faith, malicious, or wanton and reckless. Id.

## V. Conclusion

For the reasons set forth above, and viewing the facts in the light most favorable to the plaintiffs, this Court finds that the plaintiffs have establish a genuine issue of material fact concerning their allegations of excessive force and battery, but that the plaintiffs have failed to establish a genuine issue of material fact concerning the unlawful arrest claim. Accordingly, the defendants' motion for summary judgment is GRANTED in part and

DENIED in part. The plaintiffs' 42 U.S.C. § 1983 claim with regard to the unlawful arrest is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     January 29, 2010

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE